[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 BACKGROUND
This is an action brought by the Plaintiff wife against Defendant husband for dissolution of their marriage on the ground of irretrievable breakdown. The parties were married on September 15, 1990 at Stamford, Connecticut. There is one minor child issue of the marriage: Ariana Mygatt born May 5, 1991. During the course of the marriage, the defendant adopted the minor child of the plaintiff from a prior marriage, Paris Mygatt (born Klein) born August 9, 1988. CT Page 3544
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed orders and trial memoranda. Based upon the evidence, the court makes the following findings.
This action was commenced on July 29, 1998. The court has jurisdiction, and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground.
The parties met in March 1990, moved in together within months thereafter, and were married in September 1990. Their courtship was far too short to provide either with a true picture of what each wanted and expected. The Plaintiff desired a life of comfort and luxury, while the Defendant sought companionship and a family who would live his modest, conservative life style. Both were unwilling to trust that the other was committed to make their interests as a couple of primary importance, and their behavior confirmed that their concerns were warranted. Conflicts began immediately after the marriage, and there were very few good times before the marriage broke down irretrievably in mid 1994.
The Plaintiff is 45 years of age and in good health. She obtained her high school degree. Thereafter, with courses paid for by the Defendant, she obtained a paralegal certificate. Prior to this marriage, she had worked in banking, and 2 years ago, she worked at Clairol Corporation for 6 months. She ended her employment to care for her children. Presently, she is pursuing a bachelor's degree at Fairfield University, with a major in sociology, with one year's credits to finish.
Prior to the marriage, the Plaintiff resided in a converted stable in Westport with her 13 year old daughter, Rebecca Langer, and her 1 1/2 year old son, Paris Klein, both children from prior marriages.
The Defendant is 60 years old and in good health. At the time of the marriage, he was a principal of a two man architectural firm with offices in New York City. During the marriage, the Defendant's average earnings from his practice as an architect were approximately $25,000 per year. In 1999, he earned $43,000. CT Page 3545
Prior to their marriage, on or about August 3, 1990, the parties agreed that the Defendant would place in escrow a deed conveying to the Plaintiff a one-half interest in a New Canaan house he was about to purchase. The Defendant paid $100,000 of the purchase price with his funds and the balance from a mortgage loan. At the Plaintiff's request, and because she was pregnant at the time, he had the Plaintiff's name included on the deed as a joint tenant. The purchase was completed on August 6, 1990, and the deed recorded after the marriage.
At the time of the marriage, in September 1990, the Defendant had a net worth of approximately one million dollars with assets of a one family house in New Canaan, a one family house where he resided in Weehawken, New Jersey, savings, investments, retirement funds, and an interest in a family partnership. At the same time, the Plaintiff had debts totaling approximately $15,000, gross monthly income of approximately $1,005 per month and a monthly rent obligation of $700. After the marriage, the Defendant paid the Plaintiff's $15,000 debts.
Marriage counseling began during the first month of the marriage. Initial problems related to financial issues and the Plaintiff's demand for an interest in and/or control of the Defendant's property. She was consumed with money issues and unwilling to live a life style consistent with the Defendant's limited earnings. The Defendant began, shortly after the marriage, to liquidate assets to pay debts incurred by the Plaintiff.
Although finances were an issue, the Defendant began adoption proceedings for Paris Klein in October 1991, and the Defendant, his sister and two brothers funded a $75,000 trust for Paris, naming Peter Mygatt, the Defendant's brother, as trustee. An educational trust for Ariana Mygatt had already been established pursuant to the will of the Defendant's mother, Katrina Mygatt.
During the marriage, the Defendant used assets owned prior to the marriage and part of his inheritance from his mother to pay for the addition of an apartment and the mortgage on the Weehawken house. This addition increased the income from this property to $1500 per month, without adjustment for depreciation. Though this property is presently used as a two family house, this use is not permitted by zoning. The fair market value of this house, used as permitted by law, is $250,000. The Defendant also owns a one-seventh partnership interest in a Ridgefield CT Page 3546 parcel worth $31,500 and a one-sixteenth interest in the family partnership owning undeveloped land in Darien worth approximately $93,000.
In 1993, the parties sold the New Canaan house with no financial gain. With money inherited from his mother, and other of his funds, the Defendant paid the mortgage and made improvements to the Weehawken house, partially funded a trust for Paris, provided money for the support, education, and medical and dental expenses of Rebecca Langer (Plaintiff's daughter from a prior marriage), paid college tuition for Pamela, purchased a life insurance policy for the benefit of Paris and Ariana, purchased his family's former home, and paid for legal fees for this divorce. During this same period, 1993, the Plaintiff released Rebecca's father from his $90 per week support payments, and the Defendant, thereafter, voluntarily assumed many of her living expenses.
In April 1993, the parties moved into 151 Chestnut Hill Road, Stamford, then owned by the estate of the Defendant's mother. This home had been built by the Defendant's father and had been the family home since the early 1940's.
The Defendant, his sister and two brothers inherited their mother's estate, valued at $550,000 in equal shares. In late 1993, the Defendant purchased the interest of his sister and brothers in the Stamford house. He took title in his name alone and this further increased the friction between the parties. He took title in his name because, by late 1993, he had serious concerns and reservations about the future of the marriage. The current value of this property is $590,000 and it is encumbered by a first mortgage in the amount of $188,000.
The Defendant's concern about the viability of the marriage escalated with the Plaintiff's repeated demands for control of assets, her constant need for additional finances, her apparent and expressed lack of feelings for the Defendant, and with his finding evidence of Plaintiff's repeated communications with a former male friend with whom she had been romantically involved.
In mid 1993, the Defendant, in an attempt to restrain the Plaintiff's spending, instituted a family budget. He paid the mortgage, real estate taxes, and medical insurance and gave the Plaintiff $3000 per month for other household expenses. When the Plaintiff failed to pay bills for heating oil and insurance, the CT Page 3547 Defendant began paying these and reduced the amount he gave to the Plaintiff to $2650 per month. In March 1996, without authorization, the Plaintiff endorsed the Defendant's signature on a $15,000 insurance check for damage to the roof of the Stamford house, used $9000 and refused to account for the funds. Once again, on July 9, 1998, the Plaintiff endorsed the Defendant's name, without his permission, to an insurance check and appropriated the proceeds. All of these events added to the marital problems.
The Defendant's present net worth is approximately one million dollars. The Defendant's rental property in Weehawken continues to produce income in the amount of $1500 per month. The Defendant has paid the Plaintiff $9500 for her attorney's fees and disbursements.
The parties have reached an agreement on issues relating to the care and custody of the children. In accordance with the parties agreement, the court enters the following orders:
 1. Parties are awarded joint legal custody of the two minor children, Paris Mygatt born August 9, 1988; and Ariana Mygatt, born May 5, 1991.
2. The Plaintiff shall be the primary residential parent.
 3. The Defendant shall have visitation access to the children, on the same schedule as ordered pendente lite by agreement of the parties on August 30, 1999, and as previously entered by agreement before the court as to Christmas/New Year's visitation.
 4. The parties shall alternate all major legal holidays on an annual basis, and school recess periods shall be alternated between the parties. The Defendant shall have access to the children during the summer school vacation for up to four weeks, of which not more than two weeks may be continuous, upon not less than sixty days written notice to the Plaintiff as to the specific summer weeks during which the Defendant shall exercise visitation with the minor children.
 5. As to any disputes between the parties as to the terms or circumstances or conditions of any access period or visitation, the parties are ordered to mediate with the CT Page 3548 Family Relations Office in the Stamford Superior Court.
The court has carefully considered the criteria sets forth in General Statutes §§ 46b-62, 46b-81, 46b-82, 46b-84 and the applicable case law in reaching the decisions reflected in the orders that follow:
 1. The marriage of the parties having been broken down irretrievably, is hereby dissolved.
 2. Custody of the minor children shall be as hereinbefore set forth.
 3. The Defendant shall continue existing medical coverage for the benefit of the children for so long as he is responsible for their support. The Plaintiff shall also provide medical and dental insurance for the minor children as such may be available through her employment. Both parties shall be equally responsible for any unreimbursed medical and dental expenses for the minor children. This percentage deviates from the presumptive guideline figures, but said deviation is appropriate as part of a coordination of total family support and it would be inequitable not to so deviate. The Plaintiff shall be entitled to the continuation of her current coverage under the Defendant's group medical plan, at her expense for the maximum period allowed by law and the Defendant shall cooperate with the wife's continuation of said coverage under COBRA.
 4. The Defendant shall pay to the Plaintiff the sum of $305 per week for the support of both minor children, in accordance with the child support guidelines until either child obtains the age of 18 or graduates from high school, whichever is later, but in no event past the child's 19th birthday. Thereafter, child support shall be determined by the Superior Court of the State of Connecticut. Contingent wage withholding is ordered in accordance with the advisement of rights and waiver on file.
 5. The Defendant shall pay to the Plaintiff as alimony the sum of $300 per week until September 15, 2005, nonmodifiable as to term, to terminate earlier on the death of either party, the Plaintiff's remarriage or CT Page 3549 cohabitation pursuant to General Statutes § 46b-84 (b), whichever first occurs.
 6. The Defendant shall retain ownership of the property at 151 Chestnut Hill Road, Stamford, Connecticut free of any claim by the Plaintiff. The Plaintiff may continue to occupy said premises until August 1, 2000, and shall deliver possession to the Defendant on or before said date in its present condition, reasonable wear and tear excepted, together with all personalty listed on Exhibit 6 attached hereto. Plaintiff shall provide written notice, at least 1 week in advance, to Defendant of the date when she will deliver possession, and the Defendant shall have the right, at any reasonable time prior to said date, to inspect the condition of the premises. On the date possession is delivered to the Defendant, the Defendant shall pay to the Plaintiff, by way of lump sum alimony, the sum of $200,000. The court retains jurisdiction over any disputes that may arise involving the transfer of possession and condition of the premises at the time of transfer.
 7. The Defendant shall retain any and all of his interests, whether individually, as a member of a partnership, trust or group, in all other real estate and in partnerships shown on his financial affidavit, i.e., property in addition to 151 Chestnut Hill Road, provision for which is made in paragraph 6, supra.
 8. The Defendant shall assign and transfer to the Plaintiff, on or before April 14, 2000, by way of assignment of estate pursuant to General Statutes § 46b-81 (c), twenty percent of his interest in H.G. Wellington Mutual Funds listed in Paragraph IIE of his financial statement dated December 22, 1999.
 9. The Defendant shall retain his SEP/IRA (H.G. Wellington), his IRA (INVESCO funds), his H.G. Wellington pension shown on Schedule II G of his financial affidavit, his funds in his checking and savings account and the Peugeot and Subaru shown on his financial affidavit. The 1995 Volvo shall be the property of the Plaintiff and the Defendant shall take all steps necessary to transfer title of said Volvo automobile to the Plaintiff. CT Page 3550
 10. The Defendant father shall maintain the Universal Life Insurance policy naming the minor children, Paris and Ariana, as irrevocable beneficiaries, having an approximate current face value in excess of $200,000 and shall do nothing to cause the termination or diminution in value of said policy or otherwise interfere with the administration of the policy by the trustee. The Defendant shall further obtain a term life insurance policy to remain in effect until September 15, 2005, naming the Plaintiff as irrevocable beneficiary in the amount of $100,000.
 11. Each of the parties shall be solely liable and responsible for all liabilities shown on their respective financial affidavits.
 12. The Defendant shall pay to the Plaintiff the sum of ten thousand ($10,000) as a contribution toward her counsel fees within thirty (30) days of the date hereof.
13. The Plaintiff shall retain ownership of the following:
a. Personal property owned by her prior to the marriage.
b. Property inherited by her during the marriage.
 c. Personal property, such as jewelry, purchased by her during the marriage.
 d. Bank of Boston accounts shown as belonging to her on her financial affidavit.
 14. The personal property shown on Trial Exhibit 6 at trial, a copy of which is attached, shall be and remain the property of the Defendant.
 15. In the event there shall be any disputes concerning personal property, the parties shall mediate the issues before Family Relations. In the event they are unable to reach agreement, they may return to court for further hearing and orders on this issue. The court will retain jurisdiction over the issues of personal property.
Judgment will enter in accordance with these orders. CT Page 3551
By the Court
HILLER, J.
INVENTORY
JOSEPH MYGATT — FURNISHINGS, HEIRLOOMS AND MEMORABILIA House Contents — August 1998 151 Chestnut Hill Rd. Stamford, CT
LIVING ROOM
Parlor Grand Piano — "Haddorff" — 58x69 (with Music Bench) Pastel Girl's Portrait 24x30 Marquetry Bookcase w/drawer and Glass Doors 38x57 Marquetry Writing Desk (kidney shape) 48x26 — matches bookcase Marquetry side chair — rush seat Large Persian Rug 10 ft x 14 ft (dk red) Standing Floor Lamp (single bulb) 58h w/shade Side table (trestle style) cherry wood 28x17x29h Framed Antique Quilt "Flower Garden" 44x48 Tavern Table w/drawer 44x31x25h (2) Standing Floor Lamps up-light plus 3-way reading w/shades 61h Brass Case Carriage Clock 2 marble Globes w/bases Pr white marble bookends Bronze Standing Reading Lamp — L C Tiffany "Acorn" shade Black marble or onyx Mantel Clock Small bronze bedside candleholder TV 10-drawer Cherry Highboy "Queen Anne" 44x87 2 Mahogany side tables 16x16, 12x18 Black ptd wood "Empire" style bookcase w/glass doors 62x61h Stereo system, tuner, player, cassette changer "Mitsubishi" CD player "Denon" VCR "Sylvania" Folding leaf Card Table 30x60 Small magazine shelf unit Chinese wastebasket Small persian rug (tan) 26x50 Framed Watercolor Paintings and Ink Wash Drawings Gilt Framed Hall Mirror 29x56h
STAIR HALL CT Page 3552
Steamer Trunk Upholstered Chaise Chinese Rug (lt brown) Unframed Mirror Framed family photographs
DINING ROOM CLOSET
Dining Table (3 leaf) plus 2 armchairs and 6 side chairs — Queen Anne style Large Kilim rug — Tunisian (dk green) 9 ft x 13 ft Cherry burl veneer serving sideboard — claw foot 61x24x44h 2 Sterling Candelabra "CSA" — Black, Starr Frost 2 matching side chairs — cane seating and backs Steuben crystal vase Glass candelabra (drop crystal) Lg white china pitcher Green glaze china vase Sm crystal stem vase Shaker spinning wheel Hexagonal chinese lacquer box w/top Wood childs chair, ptd green China Hot Chocolate Cups — Tiffany Co. Tall china cylindrical vase "Famille Vert" Side table, trestle style 48x22 Assorted antique silver pieces
KITCHEN
"Italian" China, floral pattern, rooster marking — Dessert, coffee, tea, vase sets Misc. serving trays, wood, pewter, black enamel 8 Dinner Plates "Clematis" Wedgewood #9641 13 Dessert Plates, Chinese "Butterfly" Pattern, 1 broken Crystal Stemware (matching) 9 waters, 10 champagnes, 4 sherrys 12 Dinner Plates, gold border Tiffany Co. Ornamental Tea Cups w/saucers:
 — Albert "Cleopatra" — R C Derby "Old Amesbury" A73 (peacock) — R C Derby #2451 — Chinese "Rising Sun" — Spode "Tower" (5 pcs) — Mason "Ironstone" (3 pcs + plate)
CT Page 3553 6 Lg soup plates — Blue Miessen Misc. china — cups, plates, bowls Sterling Silver Baby Cups (EHM, AKM) Napkin Rings (MEB, JRM, Ellie) Utensils, JRM, EHM, AKM Serving Forks and Spoons, Large and Small Salad Servers Carving Knives Serving Platters Vegetable Dishes Salad Bowls Sm Wedgewood Pitcher (white) 10 Dessert plates, red gold, "Limoges" 8 Butter Plates "Trianon" Black Knight Red Glassware 13 waters, 12 bowls, 12 sm plates Small Glass Mug (red top) engraved "Katrina" 5 Kitchen chairs wood ptd green — rush seating 7 blue Plates WayRite Scale 25lb Rug
PORCH
Pine Blanket Chest Player Piano Wood Picnic Table w/2 benches Standing lamp — metal reflector Sm Child's Bench Tie-dye wall hanging
LIBRARY
Black upholstered wood frame Sofa Upholstered Wing Chair Tea Table w/glass tray "Chippendale" base Blue/brown rug High Wood Stool w/back KLH Stereo Set Ptd Carved wood Balinese "Demon" Statue "Harvard" Desk Chair Sm Oval End Table Bronze Fireplace Tools Lead-cased ceramic dish 3 Reading Lamps All inherited books, photos and papers CT Page 3554 Oval Mirror
GUEST BEDROOM
Full-size Bed, Side Tables, Dresser w/mirror Lamps Cast Iron Standing Scale Framed Pastel "Killarney"
ARIANA'S BEDROOM
Child's Bed Child's Dressing Table Matching Maple Burl Dresser Wood Rocking Chair Child's Chair
REBECCA'S BEDROOM
Wood Drawing Table and Stool Metal File Cabinet Small Bedside Table w/shelf Trunk
LAUNDRY ROOM
Single Bed Candlestand Upholstered Easy Chair Dresser Red Kilim Rug Side Chair w/Seat Lamps
MASTER BEDROOM
2 Bedside Tables Tall Dresser w/Mirror Wide Dresser w/Mirror Persian Rug 8x11 Rolling Metal Blanket Chest Small Sewing Table
HALL/LINEN CABINETS CT Page 3555
Carved Chinese Chest Tablecloths Bureau scarves Bedspreads Antique linens Oval Rug (lt green) Persian Rug (runner)
ATTIC
Family albums Holiday ornaments